Good morning. May it please the court, my name is Terence D'Souza and I'm a certified law student at the UC Irvine School of Law. My partner is Robin Gray and our advisor is Stuart Miller. We represent Nancy Nolette. I would like to reserve five minutes for rebuttal. I will be discussing how the district court misread the complaint and why the Younger Doctrine does not bar federal court jurisdiction. My partner will be discussing the First Amendment and the city's recent supplemental filing. This case is about the suppression of First Amendment rights. Nolette has been intimidated from filing ballot measures due to harassing litigation by the city. The district court misread the complaint because it only saw this case as about appealing three state court decisions. Instead, this case is about damages for not being able to file petitions in the past and an injunction to prevent harassing litigation in the future. Nolette argued in her complaint that she would have been free to exercise her political speech, but for the unlawful actions of the defendant. The state trial court in Nevada found that the city's bringing of four separate lawsuits as being, quote, to discourage any other initiative petitions seeking to set policy for the city. And that is on ER 162. This violated Rule 11 of the Nevada Rules of Civil Procedure, which also is identical to Rule 11 of the Federal Rules of Civil Procedure. Let me jump ahead because this is a very complicated procedural history. I think we are familiar with it. You mentioned that in her complaint, she was targeting what? Because this is very important here. What was she complaining about in her complaint? Nolette's complaining about that she was not able to file ballot measures. She was chilled and she was unable to file and she was afraid if she would file ballot measures, she would be sued by the city. Okay, so to the extent she's complained about the future, you mentioned that she's worried about future lawsuits. Yes. How do we have jurisdiction over that? Do we have a justiciable controversy over something that hasn't happened yet? Your Honor, here there have been four separate cases when Nolette and other citizens have been sued, and she's afraid that if she does file again, a suit will occur. In this court in Wilson v. Brommer in 2010, a plausible and reasonable fear of prosecution is sufficient for ripeness to ensure that an injunction can be issued here. She's afraid that if she does participate in the political process by filing ballot measures, that she will be sued. She doesn't seem to have been inhibited so far. Your Honor, she has not filed any cases since 2010, since these three individual cases were brought, and she is afraid at this point that if she does file, she will be sued again. Is there evidence that she would have participated in trying to get other ballot measures or measures on the ballot since then, but for this perceived chilling effect? She has been very active. There's evidence that she's very active as a citizen in trying to file ballot measures. I do not recall a specific site where she has petitions in line that she would have filed, but she is afraid if she does engage in the process, she will be sued again because of four lawsuits that were brought. The district court therefore erred in dismissing this case under Younger because Nolette's not trying to interfere with any type of state court proceeding that is ongoing or otherwise. Beyond that, Younger only applies to three types of pending state court proceedings. The first is a state criminal prosecution, which is not applicable here because all we have are four challenges to ballot measures. The city could have pursued the challenge to ballot measures via Chapter 43, where they would not have to name any individual citizens, but they chose not to. Instead, they sued Nolette and other citizens in four separate lawsuits. The second prong of civil enforcement actions akin to criminal prosecutions also do not apply here. For example, like a public nuisance action, there are no underlying criminal statutes at play, and that section is not applicable as well. And the third type of proceeding are civil proceedings causing interference of a state court judicial function, like seeking a federal court intervention in a state court contempt order, which is also not present here. Therefore, because Nolette is not trying to interfere with any type of state court proceeding ongoing or otherwise, and second, because this is not the type of proceeding to which Younger applies, the Younger document cannot bar federal court jurisdiction. Thank you. I do have one question, but I'm not sure who it should be addressed to. But very early on in the opening brief, there's a statement, Nolette does not pursue her claims against city officials in either their official or individual capacities. Yes. How are the city officials involved? I mean, what's left? If it's not official and if it's not individual? Yes. Your Honor, we're just suing the city. We dropped the other individual defendant. So only the city is left in this case? Yes, Your Honor. Since we're suing the city, it's super forced to sue the individual defendants. Thank you. Thank you. Ms. Gray. May it please the court, I'll first address the First Amendment issues and then the city's recent filing. This court should determine that Boulder City violated Nolette's First Amendment rights for two reasons. First, the Nevada Supreme Court in John B. Douglas County School District held that SLAPP violations implicate important First Amendment rights. Additionally, in this case, in 2014, the Nevada Supreme Court conclusively held that the city's actions violated established Nevada law against SLAPP initiatives. Because these actions were brought by the government and because of this prior case law in Nevada, this constitutes a First Amendment violation that Nolette has yet to be compensated for. Help me with putting this issue into context. What exactly are you seeking from this court on that issue? Are you, like, summary judgment? No, Your Honor. We think that this court can determine that Nolette's First Amendment rights were violated and remand on the issue of damages alone in addition to issuing... So summary judgment. I mean, you're asking us to jump to an issue the district court hasn't addressed yet. Is that correct? That's true, Your Honor, but the court in Puerta held that review of constitutional questions is de novo, and that legal authority, in addition to in regrand jury proceedings that says that when questions of law or questions that are reviewable, de novo, this court, the appellate level, can decide these issues in the first instance, given that... But then what about the factual question of whether she was in fact chilled, whether she was inhibited by anything? We think that that just goes to the issue of damages largely, Your Honor, but because there are plenty of allegations that she would have been chilled and because the city sued Nolette and her fellow citizens four separate times over the course of many years, we think that the chilling effect is well established enough to at least... Well, you may think it, but has there been an adjudication of that issue? Not... Did your client file a summary judgment on that issue to the district court? A motion for... So the city hasn't even had an opportunity to respond to the request that you're making to us here.  Because of the holding in the 2014 decision by the Nevada Supreme Court, that court determined that the city's practices did violate Nevada anti-SLAPP law. The city then should have... So we've got a world of issue preclusion arguments to be made someplace, but I'm not sure why they should be made here in the first instance. They should be made here in the first instance, Your Honor, because the 2014 Nevada Supreme Court decision did determine conclusively that the city's pattern and practice of suing Nolette both independently violated the SLAPP actions, each lawsuit independently, in addition to the multiplicity of the actions brought over the course of the years violated Nevada anti-SLAPP law. And that same Nevada Supreme Court held in a prior case that any implication of SLAPP lawsuits does implicate the First Amendment. Here, we have a government actor bringing SLAPP suits against citizens who want to be involved in the political process, and the Nevada Supreme Court decision. In addition, this court should decide independently of those that the city's strategy was not the least restrictive means. And there's also issue preclusion there for the 2011 holding that these practices violate Nevada Rule 11, Nevada Ethics Rule 11, and the Federal Rules of Civil Procedure Rule 11, holding that the multiple lawsuit strategy was done to discourage initiative petitions in the future. Nolette's political speech should be guaranteed strict scrutiny, and the city has to prove that the burden on speech is narrowly tailored to serve an overriding state interest. Here, the city's pattern and practice of suing Nolette four separate times was not the least restrictive means when an alternative measure exists through Nevada Revised Statute Section 43. That section allows the city to instead post notice that the initiative is going to be challenged and debate the initiative instead of having to be dragged into court, pay appearance fees, and have their political rights chilled. And counsel, just so I'm clear here, you mentioned a couple times that this court can decide. Do you know of any authority that says this court must decide these issues? No. Because normally when you think of a motion for summary judgment, there's a motion filed, there are clear exhibits, there was argument made as to summary judgment why. I don't think that's, there really hasn't been a pleading filed in this court like that, has there been? It's, so far, no, Your Honor, but the prior holdings in this case make it unique. Additionally, her federal case has been pending for five years. She's an elderly citizen and sending it back to the district court on remand for the substantive issues would present additional procedural hurdles and additional opportunities that might create a pitfall for pro se litigants in the lower court level when, in fact, the issues can, in this case, be decided in the collateral estoppel. No, and I appreciate the, that's the equities of why we should. I'm just trying to think, normally I'm used to dealing with a summary judgment motion, there's a motion with exhibits and deposition testimony noted, and we just don't have that really before us right now. That's true, Your Honor, but that type of testimony in both SLAPP actions and First Amendment actions isn't always required. Here, we have plenty of documents on the record indicating that this is the city's practice. We have the Nevada Supreme Court saying twice both that the city's practices violated Nevada rules of conduct and were done for an improper purpose, and there the Nevada Supreme Court even said were done with the intent to chill future political speech, and then the 2014 holding that these practices violate Nevada anti-SLAPP law both demonstrate conclusively enough to make this case a case where the court should, not must, should determine in the first instance that her rights were violated. Do you want to reserve the rest of your time? Yes, please. Good morning, Your Honors. Micah Echols for all defendants' appellees. Well, is anybody left in the case other than the city? I think, Your Honor, based upon that concession on page three of their brief, the only thing we have here is Nolet against the city for a single claim for 1983 First Amendment violations. So one thing we pointed out in our answering brief is since they made that concession in their brief, now they have to go the further step of the Monell claim, and they haven't really articulated how that goes, and I realize they've alleged pattern or practice, but they talk about four lawsuits. The first lawsuit, she definitely was named. That's the one we prevailed on in the district court, Nevada Supreme Court went to the U.S. Supreme Court. We prevailed in that case, and that's where we got the distinction where the Nevada Supreme Court confirmed, hey, Boulder City, if you have an administrative issue, the citizens aren't allowed to pry into that, but if it's a legislative issue that applies to the entire city, then they are. And so with that rule, we took three additional issues and said, okay, let's file declaratory relief complaints. Three judges looked at those three different issues. They all ended up denying the anti-SLAPP motions. That's where we've seen our supplemental excerpts where those three were consolidated from the Nevada Supreme Court. It was in the Nevada Supreme Court a long time because there was a legislative fix to the anti-SLAPP statute in Chapter 41 of the Nevada Revised Statutes, and what the legislature did is they said, okay, there's this metabolic research case that came out from the Ninth Circuit commenting upon our anti-SLAPP law, saying that it's appealable, and we like that interpretation, so we're going to make that clear. And the second fix that was put into the statute was cities like Boulder City, you cannot sue people for non-damages or just declaratory relief. What you have to do, so that would include no damages claims, no declaratory relief claims. So that was put in a legislative fix. Since that legislative fix, there's no implication that the city is going to file any more lawsuits. In fact, what we put in our 28J letter was a new lawsuit that NOLET filed against Boulder City, and that was recently affirmed on the 24th of March by the on-bank Nevada Supreme Court. That lawsuit has to do with the same issue which was in the trio of lawsuits on whether the city can incur debt for municipal capital improvements up to a million dollars without getting voter approval on every single expenditure. So Boulder City had originally tried to do that on its own as an administrative measure. Nevada Supreme Court says, no, that's a legislative measure. So the city actually went out and says, okay, well let's put it to the voters. The voters approve that. NOLET sued us to try to turn that around, and then the Supreme Court says, you can't have it both ways. If you're supposed to do it Boulder City legislatively, then just let us do it legislatively. Mr. Eccles, let me ask you kind of an off-the-wall question. You've argued before this court many times. You're an experienced advocate. It seems like this kind of case is like the Hatfield-McCoys, and it's just never going to end. Boulder City is going to exist unless it's dissolved, and there are people who don't want Boulder City to change. They want the way that it is. Do you think, and this will be a question I'll ask the other side. They can consult with their professor. We do have a mediation office at this court. This may be crazy to even think it's possible here, but do you think that there's a way, because no matter what we rule in this case, I've got to tell you, I think you guys are going to be back in one form or another, someone suing someone coming up. Would that be something that you think about would be helpful? I think at the, I'm not sure on that, Your Honor. I know the city's paid out about $200,000 in attorney's fees on just these issues that we're talking about that are in the record to Nolet's attorneys. As far as staying the case, going to mediation, can we get these parties together? I honestly don't know. I think we were exempted from mediation when the case came up the first time because she wasn't represented. Right, but maybe that's changed now. I'm just asking, and again, what we may do, I'm just thinking off the top of my head, our panel could issue an order to the parties asking in 15 days, state your position on mediation with the Ninth Circuit, because I have to say, this is not going to stop. I'm not trying to be like Solomon up here, but I'm just telling you, this is just going to keep going, and they're going to keep suing each other. I agree with that, Your Honor. When I was looking at all the papers, I thought, Ms. Nolet is probably going to be just a permanent fixture in Boulder City. Whenever a petition comes out, she'll challenge it. Whenever we get a petition that we think she might challenge, we'll put it to the voters. It's going to be this back and forth, so I agree with that, Your Honor. I would say that if Nolet is represented by counsel, that would definitely help us a lot in dealing with her, as far as a mediation goes. Continue with your argument. I just want to throw that out there. Thank you, Your Honor. Counsel talked about the abstention doctrine under Younger. After the Sprint v. Jacobs case, our position became considerably weaker. Obviously, it's not a case that the Supreme Court can't decide. In page 30, we cited a couple of cases that said, okay, civil enforcement actions don't necessarily have to be by the state. It can be a local government, and it doesn't have to be into criminal activity. Kind of our better response to Sprint is to look at the ReadyLink case, which goes to our third issue on claim preclusion. I believe ReadyLink might have been the circuit's first opportunity to consider Sprint after it was released. It says, okay, this is a case that came to us on Younger abstention. We acknowledge Sprint is the leading authority from the Supreme Court. They got strike one, and they're out because it wasn't filed by any type of governmental entity, the action, so it couldn't have satisfied any of the other things. It was a non-criminal case. Then the court went on and said, well, but we're not done with our analysis. We can look at claim preclusion, and the court in ReadyLink actually considered claim preclusion for the first time on appeal. In this case, in doing the Younger analysis, the court on pages 10 and 12 of the record, which is the written decision, provided some of the legal background on claim preclusion as an element of abstention. Then on page 12 of the record, Judge Mahan went ahead and he said, well, they could, Nolet could have brought the constitutional claims in the state cases. I sort of feel like I'm looking at the mirror here, though, because part of the argument being made by Nolet now is that, well, effectively we did, so give us summary judgment, because all those issues have been resolved by the Nevada Supreme Court. Well, the summary judgment, I think, is improper, because she didn't move for summary judgment. She opposed our motion for summary judgment, so there was no cross-motion, and so But, but is it the case the Nevada Supreme Court's decision has answered all the questions that need to be answered? Not on claim preclusion, Your Honor. Claim preclusion requires the five-star v. Ruby, requires same parties, and there's also a new case that we cite in our brief, although we didn't elaborate on the holding. Weddle v. Sharp is a Nevada Supreme Court case that changes the five-star test a little bit on whether there was mutuality between the parties. Now in the trio of lawsuits that we have that resulted in the Nevada Supreme Court opinion that's in our supplemental excerpts, all the parties were not the same in all those cases, and some of the issues were distinct, and so for her to say that her First Amendment rights have been chilled, and she's entitled to summary judgment on that Was the city missing? The city was in all of them, but the petitioners were different. That's the only party who's left now. On our side, but on their side, the petitioners were different in the different cases. Was Nolette missing? She's only in one case of the three. So another argument that we put out there, we didn't see much of a response. I mean, there is kind of a cursory response, a reply brief on the Rooker-Feldman doctrine. That was kind of our first argument and our motion to dismiss, that they can't seek supplemental remedies of what they've gotten in the district court, and what the judge points out in his report. The point in time for the comparison is the time she filed her federal district court complaint. At the time she filed that, the three trio of cases had not been resolved. The one earlier case was resolved and had gone to the U.S. Supreme Court, and the city prevailed on that. And so if you look at what she was really disappointed with, was those trio of cases, and she also mentioned What the claim she brings here is not that results different from those should be reached in those cases. The argument is that she was inhibited from pursuing other ballot questions or assisting in the effort to get other questions onto the ballot. And that does seem to be a distinct question that doesn't require unwinding the previous decisions. Indeed, the subsequent decision in the Nevada Supreme Court suggests you don't have to unwind the previous decisions in order to reach a factual conclusion that somehow the later actions were improper. We have heard that argument, Your Honor, in a general sense in the briefs before this court by counsel, but we have no articulation of what any of these are. And so Well, I don't think I just did. I mean, the claim is not that the ballot issue, and I've lost track of them, that the ballot issues that were not allowed to stay on the ballot should be go back onto the ballot or be put on the next ballot. The argument is that because of this practice of raising the legal challenge by a vehicle which names the ballot proponents individually as defendants, that discourages NOLET and presumably other ballot proponents from pursuing additional questions. How does that require undoing the decision of the Nevada court which upheld the city's position that the first question shouldn't go on the ballot? Number one, I think the Nevada Supreme Court decision was limited to just the anti-slap statutes. And so when it talks about, and actually the Supreme Court went to great lengths to fine for NOLET and the other petitioners in that case because they talked about a new statute that was in effect applied retroactively. I didn't make my question clear. Okay. How does the current lawsuit in front of us require undoing the Nevada court decisions back at the beginning of this sequence that said it's okay for the city to contest whether this question shouldn't be on the ballot and it's okay to do it in the vehicle that was used which named the individual proponents as defendants. Nothing I see in the current lawsuit would change the result of that Nevada court decision. Your Honor, just for clarification, are you talking about the trio of lawsuits that went up to the Nevada Supreme Court? I think the answer is yes, but you just pointed out that she may have only led a party to one of them. And that's something I don't have a solid handle on. But I think the answer to my question is, your question is yes. Okay. So in other words, and I'm trying to understand the question. I don't think this case requires undoing those decisions. This case is about something later, that is, the alleged inhibition in bringing further questions for placement on the ballot, and if it doesn't undo the prior state court decisions, I'm not sure how Rooker-Feldman is implicated. Okay. Excuse me, your Honor. So my response to that then would be, then I'll go back to the injunction argument, of future hypothetical, we're not really sure exactly what we're talking about. You know, what's the likelihood of that? And the point that we make is, it's not likely, because now we have a legislative fix that says, Boulder City, remember these three lawsuits that you filed against these petitioners? And the anti-slap rule prohibited you from doing that? Well, you can't do that because the legislature has fixed that and clarified that you can't do that. And so really it was an interpretation of a statute that was made at the grassroots level in Boulder City, let's do it this way to try to address these issues separately, and the Supreme Court said, the legislature says you can't, so you can't. And so there's really no likelihood here that we're going to keep doing that, because now we've been put on notice for the first time with this legislative fix that was applied retroactively. I think you're probably right about that. I'm not sure that's teed up in front of us today, and I don't know how that answers the Rooker-Feldman question. How does that justify dismissal of this claim based on Rooker-Feldman? And I guess the answer there, your Honor, would be seeking additional supplemental remedies from the same lawsuit in a federal court. And that was outlined by the judge's decision, and then we cited a couple of Nevada cases on I think page 30 of our brief that says, constitutional questions most definitely can be raised in Nevada courts. Thank you very much, Counsel. Thank you, Your Honors. I'd like to make three points on rebuttal. First, the excerpts of record demonstrate that Nolet was in fact chilled. Because it was in the complaint, here at this stage, the complaint should be deemed true. And she said on page 204 of the record, quote, starting in 2006 and resuming in 2010 and continuing to the present day, defendants have established a city policy of opposing all voter initiatives with the purpose of chilling political speech. Well, you're asking for an effect summary judgment. For summary judgment, we don't accept allegations that the complaint is true. That's true, Your Honor. We think the chilling effect does run deeper than the complaint, but the allegations in the complaint at the very least should be deemed true. But the issue preclusion arguments that I raised in the opening still remain. The second point is that with respect to the city's argument about claim preclusion, Nolet was a party in two of the three 2010 cases, not one. And she was in the relevant Supreme Court case in 2014, which is where the majority of our preclusion issues come from, as well as a party in the 2011 sanctions award case. And finally, with respect to the court's question regarding mediation, we would have to consult our client. But here, the payment in the lower courts was all just attorney's fees. She's yet to be compensated for her First Amendment violations. And we don't think that the city would likely pay any additional amount to Nolet, so mediation may be futile here. And furthermore, mediation clearly wouldn't result in anything as strong as an injunction, which we think Nolet is entitled to in this case. Is that your answer, saying that mediation is pointless? We would have to consult the client. I understand, but the point of your comment seems to be there's nothing more for us to think about. Is that the case? Is that what you mean to say? No, Your Honor. The point of that comment is just to indicate that we think that the court should turn the case towards mediation. I mean, that's a different question. I mean, we're not going to race and give a decision and then say, okay, do you want to mediate now? The question is, would mediation now and a brief deferral of our decision be fruitful? So if you tell me you think the court ought to grant the relief, am I supposed to hear from that, no, mediation is going to be a waste of time right now? If that's not what you're trying to say, if you're trying to say you need to consult with your client so maybe a pause of 15 days would be useful, then that's the message you want to hear, and I think that's the message you're supposed to be giving me. And I don't quarrel with the point you're making because you're trying to argue to the merits of the case, but if you say to us you ought to get the relief you want, I want to make sure I'm not mishearing that to be a suggestion that mediation is not useful. You're not trying to make that suggestion. I think that's now been clarified. Thank you. Every time Nolet and her fellow citizens tried to be involved in the political process, the city sued them unnecessarily every single time. Therefore, we think the court should grant the relief that we seek. Thank you. Thank you very much, counsel, for your argument. This matter is submitted.
judges: Clifton, Owens, Antoon